<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BAYMONT FRANCHISE SYSTEMS, INC., a Delaware Corporation, and WYNDHAM HOTEL GROUP, LLC, a Delaware Limited Liability Company,<br><br>    Plaintiffs,<br><br>    v.<br><br>MAA KRUPA LLC, a Louisiana Limited Liability Company; SURESHCHANDRA PATEL, an individual; and URMILABEN PATEL, an individual,<br><br>    Defendants. | No. 24cv8661 (EP) (SDA)<br><br>**OPINION** |

**PADIN**, **District Judge.**

Plaintiffs Baymont Franchise Systems, Inc. ("BFS") and Wyndham Hotel Group, LLC ("WHG") (collectively, "Plaintiffs") allege that Defendants MAA Krupa, LLC ("MAA Krupa"), Sureshchandra Patel ("S. Patel"), and Urmilaben Patel ("U. Patel") (collectively, "Defendants") breached franchise agreements and related guaranty agreements. D.E. 1 ("Complaint" or "Compl."). Defendants have not answered. *See* Dkt. Plaintiffs now move for default judgement pursuant to Federal Rule of Civil Procedure 55(b)(2). D.E. 11-2 ("Motion" or "Mot."). Defendants have not opposed. The Court decides the Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons that follow, the Court will **GRANT** the Motion.

I.      BACKGROUND

A.      Factual Background[1]

On October 30, 2018, BFS entered into a franchise agreement with MAA Krupa for the operation of a 51-room Baymont guest lodging facility located at 11255 Boardwalk Drive, Baton Rouge, Louisiana (the "Facility"). Compl. ¶ 12; *id.* Ex. A (the "Franchise Agreement"). The same day, BFS and MAA Krupa entered into an agreement which governed MAA Krupa's access to and use of certain computer programs, applications, features, and services, as well as any and all modifications, corrections, updates, and enhancements to the same. *Id.* ¶ 13; *id.* Ex. B (the "SynXis Agreement"). WHG and MAA Krupa entered another agreement that same day involving phone calls for reservations at the Facility, which, under the agreement, would be governed by a third party. *Id.* ¶ 14; *id*. Ex. C (the "SRS Agreement").

On January 1, 2020, WHG and MAA Krupa entered into a Hotel Revenue Management Agreement, which provided MAA Krupa with a supplementary revenue management consulting service in connection with the Facility. *Id.* ¶ 15; *id.* Ex. D (the "Revenue Management Agreement").

Under the Franchise Agreement, MAA Krupa was required to operate the Facility for a twenty-year term. *Id.* ¶ 16. In operating the Facility, MAA Krupa was required to make periodic payments to BFS for royalties, system assessment fees, taxes, interest, fees from the SynXis Agreement, SRS fees, Revenue Management fees, and other fees, (collectively, "Recurring Fees"). *Id.* ¶ 17. § 3.6.4 of the Franchise Agreement provides that MAA Krupa was required to prepare and submit monthly reports to BFS disclosing, among other things, the amount of gross revenue

---

[1] "Where a court enters a default judgment, 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

2

earned at the Facility.  *Id.* ¶ 19.  Additionally, Defendants were obligated to maintain accurate financial information relating to the gross revenue of the Facility.  *Id.* ¶ 20.  Lastly, Defendants were required to allow BFS to examine, audit, and make copies of said financial information.  *Id*.  Interest was to be paid "on any past due amount payable to [BFS] . . . at the rate of 1.5% per month . . . accruing from the due date until . . . paid."  *Id.* ¶ 18.

The Franchise Agreement permitted BFS to terminate the Franchise Agreement, with notice to MAA Krupa, if MAA Krupa: (a) discontinued operating the Facility as a Baymont guest lodging establishment; and/or (b) lost possession or the right to possess the Facility.  *Id.* ¶ 21.  In the event of a termination, the Franchise Agreement required MAA Krupa to pay liquidated damages to BFS in accordance with a specified formula.  *Id.* ¶ 22.  The Franchise Agreement also provides that the non-prevailing party was required to "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [Franchise] Agreement or collect amounts owed under this [Franchise] Agreement."  *Id.* ¶ 23; Franchise Agreement at 34.

S. Patel and U. Patel guaranteed MAA Krupa's obligations under the Franchise Agreement to BFS.  *Id.* ¶ 24; *id*., Ex. E (the "Guaranty").  Under the terms of the Guaranty, S. Patel and U. Patel agreed, among other things, to "immediately make each payment and perform or cause [MAA Krupa] to perform, each unpaid or unperformed obligation of [MAA Krupa] under the [Franchise] Agreement."  *Id.* ¶ 25.  In addition, S. Patel and U. Patel agreed to pay the costs including reasonable attorneys' fees incurred by BFS in enforcing its rights or remedies under the Guaranty or the Franchise Agreement.  *Id.* ¶ 15.

In connection with entering into the Franchise Agreement, effective as of October 30, 2018, Defendants signed a Development Incentive Note (the "Note") in the amount of $178,500.00.  *Id.*

3

¶ 27; *id*. Ex. F (the "Note"). Pursuant to the terms of the Note, one-twentieth of the original amount of the Note would be forgiven on each anniversary of the Facility's opening date. *Id.* ¶ 28. The Note provided that if the Franchise Agreement was terminated for any reason, "the outstanding, unamortized principal balance of this Note shall be immediately due and payable without further notice, demand or presentment." *Id.* ¶ 29 (quoting Note at 1). The Note further provided that if Defendants defaulted on their obligations pursuant to the Note, they would pay 18% annual interest, or the highest rate allowed by law from the obligation's due date until paid. *Id.* ¶ 30. Lastly, the Note provided for attorneys' fees and all costs of collection. *Id.* ¶ 31.

On November 7, 2023, MAA Krupa stopped operating the Facility as a Baymont guest lodging facility, in breach of its obligations under the Franchise Agreement. *Id.* ¶ 32. By letter dated November 14, 2023, BFS acknowledged MAA Krupa's unilateral termination of the Franchise Agreement, effective November 7, 2023, and advised MAA Krupa that it owed BFS: (a) liquidated damages for premature termination in the sum of $102,000.00; (b) all outstanding Recurring Fees, totaling approximately $90,657.23; and (c) the outstanding principal balance of the Note, totaling approximately $133,875.00. *Id.* ¶ 33; *id*., Ex. G. To date, Defendants have failed to pay the liquidated damages, outstanding Recurring Fees, and the outstanding principal balance of the Note. Mot. at 4.

**B.      Procedural Background**

On August 22, 2024, Plaintiffs filed the Complaint. Compl. S. Patel, both in his individual capacity and as a representative for MAA Krupa, was served with the Summons and Amended Complaint on October 8, 2024. D.E. 6. U. Patel was also served with the Summons and Amended Complaint on October 8, 2024. *Id.* Plaintiffs then amended the complaint and Defendants failed to answer or otherwise respond to the Complaint. *See* Dkt.

4

Plaintiffs accordingly submitted a Request for Entry of Default on November 5, 2024, which the Clerk of Court entered on November 12, 2024.  D.E. 7.  Thereafter, on January 17, 2025, Plaintiffs filed this Motion.  Mot.  To date, Defendants have not appeared in this case.  *See* Dkt.

II.     **LEGAL STANDARD**

Federal Rule of Civil Procedure 55 allows for the entry of default against a party that fails to plead or otherwise defend against claims.  Although the Court has discretion in granting default judgement, the Third Circuit has emphasized that such discretion is "not without limits" and has repeatedly stated its "preference that cases be disposed of on the merits whenever practicable."  *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984) (citations omitted).

Before granting default judgment, the Court must determine whether: (1) it has subject matter jurisdiction over the claims at issue and personal jurisdiction over the defendant; (2) the defendant was properly served; (3) the complaint states a sufficient cause of action; and (4) the plaintiff has proven damages.  *Days Inns Worldwide, Inc. v. HH Pramukh, LLC*, No. 15-4318, 2016 WL 7231598, at *1 (D.N.J. Dec. 14, 2016) (citations omitted).

Additionally, a court must determine the appropriateness of default judgment by considering: (1) prejudice to the plaintiff if the default judgment is denied; (2) whether the defendant has a viable defense; and (3) whether the defendant is culpable for their delay.  *Id*.  By virtue of the defendant's default, the Court should accept as true all well-pleaded factual allegations in the complaint, except for those allegations pertaining to damages, which the plaintiff must prove.  *Comdyne I, Inc.*, 908 F.2d at 1149.

III.     ANALYSIS

   A.     **The Court Has Subject Matter Jurisdiction and Personal Jurisdiction**

To establish diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), "the party ascertaining jurisdiction must show that there is complete diversity of citizenship among the parties and an amount in controversy exceeding $75,000.00." *Schneller ex rel. Schneller v. Crozer Chester Med. Ctr.*, 387 F. App'x 289, 292 (3d Cir. 2010). A limited liability company is deemed to be a citizen of each state of which its individual members are citizens. *See Carden v. Arkoma*, 494 U.S. 185, 195-96; *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). "A natural person is deemed to be a citizen of the state where he [or she] is domiciled." *Lincoln Benefit Life Co.*, 800 F.3d at 104.

Here, the threshold requirements of subject matter jurisdiction are met. The Court is properly sitting in diversity,[2] and the alleged amount in controversy is above $75,000. Compl. ¶ 5; *see* 28 U.S.C. § 1332.

Defendants may consent to personal jurisdiction by executing a valid forum selection clause. *See Ins. Corp. of Ireland Ltd. v. Compagnie des Bauxities de Guinee*, 546 U.S. 694, 703-04 (1982). In diversity cases, federal law governs the effect given to a forum selection clause. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995). A forum selection clause is "prima

---

[2] BFS is a Delaware corporation with its principal place of business in New Jersey. Compl. ¶ 1. WHG, an LLC, is a wholly owned subsidiary of Wyndham Hotels & Resorts, Inc., a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Parsippany, New Jersey. D.E. 13 at 1. Wyndham Hotels & Resorts, Inc. is the sole member of WHG. *Id.* Thus, Plaintiffs are collectively citizens of Delaware and New Jersey.

S. Patel is the sole member of MAA Krupa. Compl. ¶ 5. S. Patel is the only constituent member of MAA Krupa and is a citizen of Louisiana. *Id.* ¶¶ 5, 7; D.E. 13 at 2. U. Patel is also a citizen of Louisiana. *Id.* ¶¶ 5, 7; D.E. 13 at 2. Thus, Defendants are collectively citizens of Louisiana.

6

facie valid" and is enforceable unless it is "unjust or unreasonable." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972).

The Court has personal jurisdiction over MAA Krupa pursuant to a valid forum selection clause in the Franchise Agreement, which stipulates "to the non-exclusive personal jurisdiction of and venue . . . the United States District Court for the District of New Jersey." *See* Franchise Agreement § 17.6.3. Further, the Franchise Agreement provides that the governing law will be that of the State of New Jersey. *Id.* § 17.6.1. The Court also has personal jurisdiction over S. Patel and U. Patel due to a valid forum selection clause in the Guaranty, which binds them to the same jurisdictional stipulation. *See* Guaranty.

**B.     Service Was Proper**

Federal Rule of Civil Procedure 4(e) provides four methods for effecting service in a district court: (1) serving the defendant in accordance with the state laws where the district court sits or where service is made; (2) personal service upon the individual; (3) leaving a copy at the individual's dwelling or place of abode with someone of a suitable age who resides there; or (4) delivering the summons and complaint to the party's legal agent. Further, under Federal Rule of Civil Procedure 4(h)(1)(A), a limited liability company may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual."

Here, Plaintiffs submitted an affidavit by Tom Cassisa, who personally served each Defendant on October 8, 2024. D.E. 6. Cassisa served U. Patel in New Roads, Louisiana; Cassisa also served S. Patel, both in his individual capacity and as a representative for MAA Krupa Corporation in New Roads, Louisiana. *Id.* Since Plaintiffs personally served Defendants pursuant to Rule 4(e)(1), there is sufficient proof of service.

7

### C. Plaintiffs Adequately Allege a Breach of Contract

Plaintiffs allege a straightforward breach of contract claim. "To state a claim for breach of contract, [the plaintiff] must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).

Plaintiffs have adequately asserted all four elements. Defendants entered valid contracts with BFS and WHG. Compl. ¶¶ 12-31. MAA Krupa unilaterally terminated the Franchise Agreement when: (1) it stopped operating the Facility as a Baymont guest lodging facility without BFS or WHG's prior consent; (2) breached the Franchise Agreement when it failed to pay liquidated damages, and outstanding Recurring Fees through the date of termination; and (3) breached the Note when it failed to pay the outstanding principal balance of the Note. *Id.* ¶¶ 32-33.

Under the Guaranty, S. Patel and U. Patel are obligated to pay liquidated damages and outstanding Recurring Fees, but have failed to perform those obligations. Mot. at 6; *see* Guaranty; *see also Travelodge Hotels, Inc. v. Huber Hotels, LLC*, No. 19-20571, 2022 WL 44634, at *6 (D.N.J. Jan. 5, 2022) (noting that a guaranty is a contract) (citation omitted). Furthermore, BFS and WHG have satisfied all their obligations under the Franchise Agreement, SRS Agreement, and Revenue Management Agreement. Compl. ¶ 34.

### D. Plaintiffs Are Entitled to Default Judgment

Having determined that Plaintiffs state a valid cause of action against Defendants, the Court considers whether default judgment is appropriate by making explicit findings regarding the following factors: (1) whether the defendant has a viable defense; (2) whether the plaintiff would suffer prejudice if the default judgment were denied; and (3) whether the defendant is culpable for

8

their delay. *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)). Here, the Court finds that all factors weigh in favor of granting default judgment, and that default judgment is thus appropriate.

### 1. There is no evidence that Defendants have a meritorious defense

"[A] defendant has established a meritorious defense when its 'allegations, if established at trial, would constitute a complete defense.'" *Mrs. Ressler's Food Prods. v. KZY Logistics LLC*, 675 F. App'x 136, 140 (3d. Cir. 2017) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)). But a defendant must "allege[] specific facts beyond simply denials or conclusory statements." *$55,518.05 in U.S. Currency*, 728 F.2d at 195. "[A] defendant . . . [must] set forth with some specificity the grounds for [its] defense." *Harad v. Aetna Cas. & Sur. Co.*, 839 F.2d 979, 982 (3d Cir. 1988).

Because Defendants failed to respond to or answer the Complaint, there is nothing in the record to suggest that Defendants have a meritorious defense. *See Trs. of Int'l Union v. Rocon, Inc.*, 2022 WL 225384, at *4 (D.N.J. Jan. 26, 2022). Accordingly, this factor weighs in favor of granting default judgment.

### 2. BFS and WHG are prejudiced without default judgment

A plaintiff must show that "its ability to pursue the claim has been hindered since the entry of the default judgment." *Feliciano v. Reliant Tooling Co., Ltd.*, 691 F.2d 653, 657 (3d Cir. 1982). Any potential prejudice must "be viewed in the context of [the defendant's] failure over an extended period of time" to cure the default. *Hritz*, 732 F.2d at 1882.

Defendants' time to answer or otherwise respond to the Complaint expired on October 29, 2024. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). Defendants' failure to participate in this case has

obstructed BFS and WHG's ability to pursue relief and, without a default judgment, they have no other means of obtaining redress for the alleged harm. Accordingly, this factor weighs in favor of granting default judgment as well.

### 3. *Defendants' conduct is culpable*

For default judgment purposes, culpability does not require intentional and malicious actions on the part of the non-movant, but merely "[r]eckless disregard for repeated communications from plaintiffs and the court." *Hritz*, 732 F.2d at 1183. "[C]ulpable conduct means actions taken willfully or in bad faith, and such bad faith may be presumed where a defendant fails to respond to a complaint and offers no reason for its failure to engage in the action." *Gayeman v. Cannon*, No. 14-1518, 2016 WL 6834109, at *2 (E.D. Pa. Nov. 21, 2016); *see also Slover v. Live Universe, Inc.*, No. 08-2645, 2009 WL 606133, at *2 (D.N.J. Mar. 9, 2009) ("Defendant is [] presumed culpable where it has failed to answer, move, or otherwise respond.") (citation omitted); *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F.App'x 519, 523 (3d Cir. 2006) (holding that a defendant's failure to respond to communications from the plaintiff and the court can constitute culpability).

At the time of this decision, more than eight months have passed since the Complaint was filed, and Defendants have failed to answer. Accordingly, this factor weighs in favor of default judgment.

### E. **Plaintiffs Are Entitled to Damages**

BFS and WHG ask for the total amount of $395,196.28, comprising of: (a) $106,276.20 for outstanding Recurring Fees; (b) $124,081.70 for liquidated damages, inclusive of interest; and (c) $164,838.38 for the outstanding balance of the Note, inclusive of interest.

*1.     Recurring Fees*

BFS and WHG seek outstanding Recurring Fees in the amount of $106,276.20, inclusive of interest (1.5% monthly). D.E. 11-6 ¶ 26 ("Mallet Aff."); *see also* Mallet Aff. Ex. H. (the "Itemized Statement"). The Court is satisfied that the Itemized Statement demonstrates entitlement to that amount.

*2.     Liquidated damages*

Pursuant to Section 12.1 of the Franchise Agreement, MAA Krupa agreed that, in the event of a termination of the Franchise Agreement pursuant to Section 11.2, it would pay liquidated damages to BFS and WHG in accordance with a formula included within the Franchise Agreement. Franchise Agreement § 12.1 at 18. Section 12.1 of the Franchise Agreement specifically set liquidated damages for the Facility at $2,000.00 for each guest room at the Facility MAA Krupa was authorized to operate. Mallet Aff. ¶ 32; Plaintiff authorized MAA Krupa to operate 51 guest rooms at the Facility. Mallet Aff. ¶ 33. Accordingly, BFS and WHG seek $102,000 in liquidated damages. *Id.* ¶ 34; *see* Franchise Agreement § 12.1 at 18.

BFS and WHG request that the Court liquidated damages be calculated at the legal rate of interest of 1.5% per month in the amount of $22,081.70, as per the terms of the Franchise Agreement. Mallet Aff. ¶ 35; *see* Franchise Agreement ¶ 12, at 18. BFS and WHG propose that the interest cover the period from December 7, 2023 (30 days from the date of termination) to February 18, 2025 (the anticipated return date of the motion Plaintiffs' filed), which amounts to 439 days. Mallet Aff. ¶ 35. Plaintiffs are using daily per diem to calculate damages. *See id.* The $22,081.70 amount is calculated by multiplying $102,000.00 (the base amount of liquidated damages) by 18% per year, which equals $18,360 in interest per year. *Id.* That amount is then divided by 365 days to equal $50.30 in interest per day. *Id.* When the per diem interest of $50.30

11

is multiplied by 439 days, the interest owed equals $22,081.70. *Id*. Thus, the Court agrees with BFS and WHG that they are entitled to $124,081.70 ($102,000.00 + $22,081.70) in liquidated damages.

### 3.    *Outstanding Note balance*

Upon termination of the Franchise Agreement, the Note provides that Defendants must pay the principal sum of $178,500.00. Note at 1. Pursuant to the terms of the Note, one-twentieth of the original amount of the Note was forgiven on each anniversary of the Facility's opening date. Compl. ¶ 28. The Note further provides that if Defendants default on their obligations pursuant to the Note, they would pay 18% annual interest, or the highest rate allowed by law from its due date until paid. *Id.* ¶ 30.

BFS and WHG allege that, at the time of termination of the Franchise Agreement, the outstanding balance of the Note was $133,875.00. Mallet Aff. ¶ 37. BFS and WHG request that the outstanding balance of the Note be calculated at the legal rate of interest of 1.5% per month in the amount of $30,963.38, as per the terms of the Note. Mallet Aff. ¶ 38; *see* Note at 1. BFS and WHG propose damages from December 7, 2023 (30 days from the date of termination) to February 18, 2025, which amounts to 439 days. Mallet Aff. ¶ 38. The $30,963.38 figure is calculated by multiplying $133,875.00 by 18% per year, which equals $24,097.50 in interest per year. *Id.* That amount is then divided by 365 days to equal $66.02 in interest per day. *Id.* When the per diem interest of $66.02 is multiplied by 439 days, the interest owed equals $30,963.38. *Id*. Thus, the Court agrees that BFS and WHG are entitled to $164,838.38 ($133,875.00 + $30,963.38) for the outstanding balance of the Note.

IV.     CONCLUSION

For these reasons, the Court will **GRANT** Plaintiffs' motion for default judgment and award $395,196.28 in total damages. An appropriate Order accompanies this Opinion.


Dated: August 12, 2025

*Evelyn Padin*
Evelyn Padin, U.S.D.J.